# EXHIBIT B

B. provide products or services similar to or competitive with products or services offered by the Company to any customer of the Company to which the Employee provided products or services on behalf of the Company or any potential customer of the Company that was solicited by the Employee on behalf of the Company during the eighteen (18) month period immediately prior to the termination of his employment with the Company;

C. solicit employees of the Company to leave the Company's employ;

D. offer or cause to be offered employment to any person who is, at the time of the offer, an employee of the Company or who was an employee of the Company at any time during the prior eighteen (18) months; or

E. entice, induce, persuade, attempt to persuade, or encourage any employee of the Company to engage in any activity that, were it done by the Employee, would violate any provision of this Agreement.

In connection with the protection afforded the Company by the covenants set forth above within this paragraph 4, Employee acknowledges and agrees that the Company's need for the covenants is based on the following: (a) the Company has expended or will expend substantial time, money and effort in training the Employee in the business of the Company; (b) Employee will, in the course of his employment, be personally entrusted with and exposed to Proprietary Information and the Company's customers; (c) the Company, during the term of this Agreement and after its termination, will be engaged in a highly competitive services industry in which many firms, including the Company, compete; (d) the Company provides services related to its business and products throughout the world; (e) Employee could, after having accessed the Proprietary Information and Company's customers while in performance of his obligations under this Agreement, become a competitor; and (f) the Company will suffer great loss and irreparable harm if, after the Employee ceases to be employed by the Company for any reason, whether voluntary or involuntary, the Employee were to directly or through the activities of any third person, enter into competition with the Company.

5. **Agreement to Mediate and Arbitrate.** The Employer and Employee agree that, to the fullest extent permitted by law, any and all disputes between them will be submitted to mediation upon terms mutually agreeable to both parties. In the event the parties do not resolve such controversies through mediation, then the Employer and Employee agree that, to the fullest extent permitted by law, any and all controversies between them will be submitted for resolution to binding arbitration in accordance with the attached Arbitration Agreement, which is incorporated herein by reference. The parties understand and agree that in the event mediation is unsuccessful, then arbitration will be the exclusive forum for resolving disputes between them, including statutory claims and all disputes arising out of the employment relationship and the termination of such relationship. The Employee and Employer expressly waive their entitlement, if any, to have controversies between them decided by a court or jury. The attached Arbitration Agreement is incorporated herein.

Notwithstanding the arbitration provisions in the attached Arbitration Agreement, each party is entitled to obtain injunctive relief to enjoin violations of the Proprietary Information Agreement and Restrictive Covenants herein to the fullest extent permitted by law.

6. **Return of Company Property.** Upon termination of employment with the Company, whether voluntary or involuntarily, all Proprietary Information, including but not limited to, business-related documents, and any and all other Company information or documents pertaining to the Company's past, present, or potential customers, including all notations, whether prepared by the Employee or others, shall be returned immediately, together with all copies thereof, to the person or place designated by the Company. The Employee shall also return immediately any vehicles, keys, credit cards, identification cards, uniforms, employment accessories, and the like, which were issued to Employee during Employee's term of employment.

7. **Exit Interview.** Prior to the time that employment with the Company ceases for any reason, whether voluntary or involuntary, the Employee agrees to meet with a designated representative of the Company to review the Employee's obligations under this Agreement.

8. **Disclosure of Obligations to New Employer.** With respect to any new employment after his employment with the Company ends for any reason (whether voluntary or involuntary), the Employee shall disclose the existence of this Agreement to each such employer. The Company agrees to furnish to the Employee another copy of this Agreement upon written request of the Employee.

9. **Employment at Will.** The parties to this Agreement expressly agree that the employment relationship created by this Agreement is at-will and may be terminated by either party upon notice to the other party.

10. **Tennessee Law Governs.** The parties to this Agreement expressly agree that the laws of the State of Tennessee shall govern the validity, construction, interpretation and effect of this Agreement, without reference to the Tennessee conflict of laws provisions. The exclusive jurisdiction and venue for all legal actions arising out of or related to this Agreement or employee's employment shall be in the state courts of Tennessee or the state in which the Employee was assigned to perform services on behalf of the Company at any time during the eighteen (18) month period immediately prior to the termination of his employment with the Company, or the United States District Court for the Western District of Tennessee, or any United States District Court for the District of such assignment or performance of services. The parties to this Agreement hereby consent to the jurisdiction of such courts.

11. **Severability.** The Employee acknowledges and represents that the duration, geographical scope, activity and subject matter of the restrictive covenants set forth herein are fair, reasonable and not excessively broad and are necessary to protect the Company's good will and Proprietary Information and agrees that the Company is entitled to rely upon, and has relied upon, such representation. It is the desire and intent of the Company and the Employee that the provisions of this Agreement shall be enforced to the fullest extent permissible. Accordingly, if any particular provision of this Agreement shall be adjudicated to be overly broad, invalid or unenforceable as written, it is the desire and intent of the Employee and the Company that the arbitrator or Court will revise such provision as it deems necessary to enforce the provision as so revised. In particular, if the Court finds that any one or more of the provisions contained in this Agreement shall for any reason be adjudicated to be excessively broad as to duration, geographical scope, activity or subject matter, it is the desire and intent of the Employee and the Company that the Court shall modify such provisions to reduce their breadth to whatever extent and in whatever manner it deems necessary to render them reasonable and enforceable. Furthermore, to the extent that this Agreement is deemed unenforceable or contrary to state law, Company will not enforce the Agreement to the extent that such enforcement would be a violation of law. This Agreement does not limit any duties, responsibilities or obligations which the Employee may have, or any rights of the Company, under applicable law. To the extent that the arbitrator or Court deems any provision of this Agreement to be unenforceable and not susceptible to modification or amendment so as to make it enforceable, it is the intent and desire of the Employee and the Company that such unenforceability shall not render any other provision of this Agreement invalid or unenforceable.

12. **Definitions.** As used throughout this Agreement: (a) the term Company shall include not only Terminix International Company L.P., but also, any or all of its subsidiaries (or successors), whether now owned or hereafter acquired by it that have, in addition to or in lieu of the Terminix International Company L.P., employed the Employee; and (b) the terms "he," "him," and "his" shall, in the case of a female employee, be deemed to mean "she," "her," and "hers" as the case may be.

13. **Voluntary Agreement.** The parties acknowledge that they have carefully read this Agreement and have had an opportunity to seek the advice of an attorney before executing this Agreement. The parties further acknowledge that they enter into this Agreement voluntarily, free from any coercion.

14. **Entire Agreement.** This Agreement supersedes any and all other agreements, whether written, oral, express, or implied, between the parties and is the entire agreement of the parties concerning the subjects covered herein.

THIS AGREEMENT AFFECTS IMPORTANT LEGAL RIGHTS. BEFORE SIGNING IT, YOU SHOULD READ IT CAREFULLY. THE EMPLOYEE HEREBY VERIFIES THAT HE HAS HAD THE OPPORTUNITY TO REVIEW THIS AGREEMENT, HAS HAD THE OPPORTUNITY TO ASK QUESTIONS, AND HEREBY ATTESTS THAT HE HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT.

IN WITNESS WHEREOF, the Company has caused these presents to be executed by its duly authorized representative and the Employee has hereunto set his hand this date noted below.

THE TERMINIX INTERNATIONAL
COMPANY L.P.

BY: _____
　　／TITLE

EMPLOYEE SIGNATURE

ROBERT A. RICHARDS
EMPLOYEE NAME (PRINT)

7-21-03
DATE

CONFIDENTIAL

PTMX 029417